REDMANN, Chief Judge.
Plaintiff appeals from a judgment on jury verdict dismissing her suit against NOPSI, the supplier of piped natural gas, for injuries to her 22-month-old son from a fire in a bathroom (in which were both a can of gasoline and a water heater that used natural gas supplied by NOPSI). We affirm.
We must affirm because there is no evidence (and none was offered but excluded) of any fault on NOPSI’s part that contributed to the fire.
Plaintiff constructs a theory that NOPSI knew that water vapor from the gas condensed in the gas lines, causing water. A NOPSI serviceman testified water in gas lines is dangerous, but his explanation of the danger is that prater stops the gas from flowing.
Plaintiff’s expert Pappas testified, at one point only, that “water in natural gas will form hydrates; it is a white solid ... [that] can interfere with your burners, it can interfere with the automatic control valve ... it will not close absolutely tight when the pilot light causes it to cut off. So this means that you can on occasion get gas leaking from the burner itself.”
Pappas himself did not make any effort to link this “hydrates” theory to the fire in our case. Pappas seems to have uttered this thought rather as an aside than as part of a theory of causation. Pappas does not, at any time, suggest that gas from the burners presents a problem when the pilot is burning (for in that case presumably the burners would merely burn, which is what they are designed to do). Evidently Pappas refers to the possibility of gas leaking from the burners when the pilot is not burning (and thus the thermocouple should have shut off all gas by the automatic control valve). Yet Pappas nowhere suggests that, if the control valve is stuck open, natural gas (methane), far lighter than air, would somehow fall down to the bathroom floor through the heavier air, rather than float up through the air in the heater vent to the outside air. Thus, gas leaking from the burners of a vented water heater could not have caused the fire in this case. Indeed, since the water heater’s pilot was apparently the only ignition source in the bathroom, no unburned gas could have leaked from the burners. The hydrates theory offers no evidence of fault on NOPSI’s part.
Plaintiff herself testified that she was always smelling (the odorant of) natural gas, but that testimony cannot be accepted as establishing either that gas caused the fire or that NOPSI was at fault. NOPSI did respond to certain complaints by plaintiff some months before the fire. It once *924 found a leak of four cubic feet per hour and therefore shackled the meter to shut off the gas completely. Plaintiff’s plumber (also a defendant, not involved in this appeal) repaired the leak and restored the gas. A NOPSI follow-up inspection showed no leak. On several other inspections because of a pilot light going out, NOPSI found no gas leak. (It did find water in the pipes, advised the installation of a “drip” to collect that water, and advised that a plumber should re-route the gas lines. Plaintiff’s plumber did re-route the lines in early February. The last NOPSI inspection reporting water in the lines was January 13, prior to that re-routing. The explosion was April 13'.) Thus there is no basis for holding NOPSI at fault for not shutting off the gas because of leaking inside pipes, for there is no proof even of leaking pipes, much less NOPSI’s knowing or being obliged to know that there were leaking pipes.
In short, we hold that the jury could not have rendered a sustainable verdict against NOPSI because of lack of evidence, either of causation by the natural gas NOPSI supplied or of some basis for liability on NOPSI’s part if causation were shown. Plaintiff’s arguments about the admission of a doctor’s deposition and defense expert testimony are not decisive because to exclude that evidence would not have permitted the jury to find against NOPSI. We similarly rule on the argument that the trial judge erred in instructing the jury that a gas supplier “owes only a duty to safely furnish natural gas to its meter, and to maintain that meter in good working condition.” Plaintiff argues that that charge was tantamount to telling the jury that NOPSI’s responsibility “stopped at the meter.” In a case in which there was evidence from which the jury could find that the gas supplier knew or should have known that the gas pipes or appliances on the other side of the meter were defective so as to present the risk of injury that in fact occurred, it would be an error of law to instruct the jury that the supplier’s responsibility “stopped at the meter.” But ours was not a case with such evidence. We repeat that our jury could not lawfully have returned a verdict against NOPSI, because of the lack of evidence to prove causation of the fire or any fault or other basis for NOPSI’s liability.
Affirmed.
BARRY, J., dissents with reasons.
BYRNES, J., dissents for reasons assigned by BARRY, J.